case number 4150407. People be Merriweather for the appellate Amanda Kimmel for me, Alison Pate Brooks. May it please the court, counsel. I'm Amanda Kimmel with the Austin State Appellate Defender here on behalf of Mr. Byron Merriweather. Today, I'd like to first address his claim of actual innocence and then address the resentencing hearing pursuant to Miller. Byron made a colorable claim of actual innocence, which was supported by the affidavit of Mr. Rashawn Pike. First, that affidavit was properly before the court and is before this court on appeal. And second, that affidavit can claim conclusive evidence that would probably change the results at trial. First, the Illinois Supreme Court has found that the petitioner is required to submit enough documentation to prove their claim. Moreover, nothing in the post-conviction act requires that supporting affidavits be filed with permission of the court. Here, Byron filed a motion to file leave for a successive petition. And then a year later, on the same day, filed a motion to supplement the record and a document entitled successive post-conviction petition. The Rashawn Pike affidavit was included in both of those documents. And in People v. Cleveland, the First District found that nothing in the act expressly directs supporting affidavits as opposed to pleadings be filed with permission. Is there anything in the record to demonstrate that the court considered the Pike affidavit? Well, the record shows that that affidavit, the motion to supplement, was docketed, so it was before the court when they made their ruling. And nothing prevents you from considering the Pike affidavit because the review is de novo and the Pike affidavit was properly supplemented to the record, which is currently on appeal. And that is in line with People v. Cleveland, where in that case, a post-conviction petition was filed 10 years past before a ruling was made. There were numerous supplemental affidavits filed and the trial court struck all of those. On review, the appellate court said the trial court did not have discretion to strike affidavits, which just added additional facts and did not add additional claims. And that's what we have here. The Pike affidavit is just another first-person account of the incident, which states that not Byron Merriweather, but Troy Wells was the shooter. And that is why that affidavit is of such a conclusive nature that it would likely change the outcome of trial. Which affidavit? The Rashawn Pike affidavit. And the court didn't reference that it had considered? The court did not reference it, no. But I would argue that because it was contained in the motion to supplement the record, that the trial court didn't have discretion not to consider it. It's clear that he ruled directly on the other affidavits. Absolutely. And he said those could not be newly discovered. Correct. And the Rashawn Pike affidavit was newly discovered because that affiant was unavailable. His affidavit discusses that he witnessed the event and then immediately left Bloomington where he was visiting family and went back to Chicago. So the court didn't consider the Pike affidavit and what relief are you asking us to give you? I would still, even if the court didn't consider the Pike affidavit because it's properly in the record, I would ask you to review it de novo and still find that it met all the requirements to prove up a claim of actual innocence and that the petition be sent back for further proceedings. Why not remand it to the trial court so the trial court can consider the Pike affidavit? That is certainly, and we conceded in the brief, that that recommendation by the state is also an appropriate grounds for relief. Okay. And turning now to the second issue, which is that the court should vacate Byron's unconstitutional de facto life sentence, remand for a new sentencing hearing pursuant to Miller. Only the rarest of juveniles should be sentenced to die in prison and Byron did not have a sentencing hearing which comports with the Eighth Amendment or comports with Miller. First, contrary to the argument, this issue has not been forfeited. Numerous courts have looked at this very same setup where someone that was sentenced as a juvenile raises this issue under Miller for the first time on appeal from a collateral proceeding and found that the issue is not forfeited. And that's because Miller has constitutional underpinnings as opposed to statutory underpinnings as well as for the purposes of fundamental fairness. Both Nieto and Warren out of the First District, both of those cases have the exact same setup where it's being raised for the first time on appeal. And in both of those cases, the court found that those individuals were not barred from going forward on their claim. They used the case of Thompson, which the state cites too in its brief, to really draw a distinction. Thompson specifically said that that individual who was 19 years old when they were sentenced was not entitled to the same relief from a collateral appeal as they cited to people versus Davis, people versus Morphin, people versus Luciano. Each of those cases was an appeal from a collateral proceeding raising Miller and Morphin and Luciano. It was being raised for the first time on appeal. But doesn't Thompson say you have to look at the factual circumstances to determine whether an as-applied challenge can be made? And so why would that be different in a juvenile case versus an adult case? Well, in Thompson, one of the things that the court discussed is that there was not enough information to know whether or not all of the things about child development applied equally to a 19-year-old. And here we have numerous pronouncements from the U.S. Supreme Court that says children are different and those differences must be incorporated. Yeah, but we don't know if those differences were incorporated without a sufficient record, right? Well, we do have the record which says simply that the court said Byron was 17 years old. The court did not say anything to show that it reflected on how his youth and immaturity and rehabilitation related to his age and that's what Miller requires. And when the Supreme Court then said in Montgomery that this was to be applied retroactively, that is extremely unique to announce a new rule and then make it retroactive. I think that's why many of the courts that have looked at this issue have relaxed forfeiture. It also goes along with the purposes of the act and fundamental fairness that someone whose constitutional rights that have been violated can bring these issues in a post-conviction petition. Byron has already had to wait four years from when his petition was initially filed to now having it fully briefed in front of this court. I referenced in my reply brief that he would have to wait an equally long time if he raised a Miller claim under post-conviction proceedings and I found out that he actually has done that. It has been rolled on and was just appealed to your court. So that that has happened, but Byron will still have to wait 18 months to two years to have it. Say that again, what did you say? I received a letter from my client saying that he had raised a subsequent PC and my reply brief, I posed it as a hypothetical, but I have since found out that he And it was ruled on? Apparently it was ruled on. It was not allowed to file the successive post-conviction? That is correct and it has been appealed. So our office doesn't yet have the record. It's still with the appellate court. But he will still, if you decide that the issue is forfeited, he will still have to wait 18 months to two years to have it, to have that issue be ruled on. Well his sentence is 70 years, isn't it? His sentence is 70 years, yes. You seem to suggest you're envisioning it's going to, if he's successful in having a new sentencing error, it's going to get significant? What I'm saying is the sentence would get reduced so much that 18 months? I mean he would have, the fundamental fairness would allow him to know what his, if you ruled on it now, it would allow him to know that he has some hope to not die in prison. And that is ultimately what Byron was sentenced to. He was sentenced to die in prison. His life expectancy is 70 years. He'll have to increase his life expectancy by 19 years just to make it to parole. And in People v. Sanders, the First District acknowledged that a person suffers a two-year decline in life expectancy for every year that they're in prison. So Byron has, Byron does have a de facto life sentence. Both Neato and the Seventh Circuit in McKinley v. Butler have said that a life sentence that is discretionary versus mandatorily imposed, that that does not make a difference if the sentence was imposed without the guiding considerations of the age-relevant factors. And Byron's sentence was imposed without those considerations. It was unconstitutionally imposed. And I think that this is akin to if a person was sentenced with an improper sentencing factor. Even though the trial court could have sentenced that person to 40 years, let's say, if they considered an improper factor and their sentence was reversed, when it was remanded, he could receive a new sentence, also of 40 years, but the trial court would not be allowed to consider that improper factor. And here, what Miller sets out is requiring, based on someone's age, an expansion of that mitigating factor. They have to consider the individual's youth, their immaturity, and potential for rehabilitation, all through the lens of the fact that they were a child and children are different. The question that the Supreme Court has eventually sort of framed this as is, does the crime reflect the transient immaturity or is he a rare child whose crimes reflect irreparable corruption? And the court here, the trial court, certainly did not consider that when making its determination. It simply mentioned that Byron was very young, that he was 17 years old. It mentioned nothing further on what his youth means or what his ability to be rehabilitated was. And therefore, Byron deserves a sentencing hearing that comports with the requirements of the Eighth Amendment and comports with Miller. Did the trial judge say anything about why he was imposing a 45-year sentence on the front end? He said just based on the nature of the crime. Because he seemed to indicate that the total sentence was really harsh. Correct. And he also discussed that he thought that the firearm enhancement was unwise. But he could have given him 20 and 25, right? Absolutely. And if he had done that, you wouldn't even be here, I assume, on that issue. Would you? Because he got the minimum. He can't go any lower than the minimum. But would you be arguing 45 as a de facto life sentence? I would likely be arguing that it is a de facto life sentence and that the sentence wasn't necessarily imposed under Miller. Under the current sentencing scheme, the firearm enhancement for someone that is under the age of 18 is now discretionary. So you would argue 45 years is a de facto life sentence? It is currently being litigated. So far, the First District in People v. Buffer, a case I cited as supplemental authority, that found a 50-year sentence to be a de facto life sentence. Obviously, Reyes, which is the Illinois Supreme Court case, that was a 97-year sentence. Byron at 70 years, this is a de facto life sentence as well. So you said there's been a statutory amendment to make the add-ons discretionary if the person's under 18? Correct. Additionally, that same statutory amendment really incorporated this U.S. Supreme Court precedent into the Illinois statute. If someone's under the age of 18 when they're sentenced, their age has to be considered, their impetuousness, level of maturity, ability to consider risks and consequences if they were subject to outside peer pressure. Can I ask you another question on this amended statute? Is it all or nothing? So in other words, does the court have discretion to an add-on of seven years? No, it's specifically that the firearm enhancement, the 25-year firearm enhancement, is no longer mandatory. It's discretionary. So it's either 25 or nothing? That is my understanding, yes. But the fact that the Illinois legislature found it fit to incorporate the requirements of Miller into a statute really allow for more discretion to the hearings. Your opinion is that the new statute comports with the Miller factors then? Yes. It just further goes to show that someone like Byron does deserve a new sentencing hearing, does deserve to have his sentence implemented under that lens of Miller, which looks not just at the person's chronological age, but how their age affects their behavior and affects their potential for rehabilitation. And that's because the Supreme Court has said it again and again, children are different and those differences must be taken into account for the purposes of sentencing. So we'd request that Byron receive a new sentencing hearing pursuant to Miller as well. Okay. You'll have rebuttal. Thank you, Your Honors. I'm Allison Paige Brooks appearing on behalf of the people. May it please the Court. With respect to the Eighth Amendment argument, the defendant in his brief specifically says that his constitutional claim is as applied to him on page 13. This is an as-applied claim. It's not a facial unconstitutional claim and there's no claim that the trial court lacked personal subject matter jurisdiction to impose the seven-year sentence. And after Castleberry, the void sentence rule is no longer valid. So this is really a simple issue. Under Jones, the appellate court is not free to excuse the waiver when an issue is not included in the post-conviction proceeding. And the defendant relies, essentially urging this court to invoke the fundamental fairness doctrine, which would violate the admonition of Jones by the Illinois Supreme Court, that this court is not free to excuse waiver under fundamental fairness. And also when the defendant urges this court to essentially revisit Jones, that's not this court's prerogative. It's the prerogative of the Supreme Court of Illinois to determine if or when to overrule its own decisions in light of Castleberry. So without that ability to cite fundamental fairness, to excuse the waiver for failure to include the issue in the petition, the only other option the defendant would have is to claim voidness. But Thompson, under paragraphs 31 to 34, recognizes only two types of voidness challenges after Castleberry, which is that it's a lack of personal or subject matter jurisdiction, or if a judgment was based on a facially unconstitutional statute that is void ab initio. Hence, none of the elements of the statute under which he was sentenced have been found facially unconstitutional and void ab initio, that is the first degree murder sentence, which is 20 to 60, the firearm enhancement, or even the lack of the restriction on good time, good conduct credit, allowing no good conduct credit under truth in sentencing for a sentence for first degree murder. None of those elements have been found facially unconstitutional as applied to everybody. Instead, the defendant says that this court should recognize that those provisions combine to render his sentence unconstitutional as applied to him, and he reasons the trial court did not take into account his youth immaturity potential for rehabilitation, which would be a fact that essentially matters if it's true, and also he says the trial court needs to determine if his crime reflected transient immaturity, which is another fact that has to be considered if that is true, or if he is the rare child whose crimes reflect irreparable corruption. Again, that's another factual matter. Those issues were not necessarily specifically litigated at the sentencing hearing, which is why there would need to be an evidentiary hearing if the defendant has a meritorious claim that is properly presented and could reach a situation where he has to prove also that he's a juvenile, and that's something sort of assumed on the basis of his argument. So essentially, he wants this court to assume that not only is he a juvenile with fact it's not been proved at an evidentiary hearing, but also other facts that have been proved in an evidentiary hearing, that is, that his sentence is actually unconstitutional as applied to him. Just simply skip all the procedure, ignore his forfeiture, ignore the procedural bars, and simply rely on the issue of retroactivity from Montgomery v. Louisiana does not mean that this court has to ignore all procedural bars. It just simply says that a court has to treat a new rule as having been in existence and applying to the proceeding as if it were at the time of trial. So in other words, the state is not relying on the finality of the judgment to say that the defendant is barred from pursuing his Miller claim because the judgment became final before he presented it to the court. In other words, Miller is now considered to be retroactive. States cannot rely on the finality of the judgment as the reason. However, Montgomery v. Louisiana said, assuming the claim is properly presented, and that's why we have this issue here. Because if the claim has not been properly presented, properly presented means it has, especially in Illinois here, because we have a requirement that issues have to be presented in a post-conviction petition. And furthermore, another thing the defendant wants this court to ignore and avoid is the requirement that the trial court, not this court, the trial court under 122-2, I think, has to determine whether there is cause and prejudice for his failure to bring this issue earlier. And those are statutory elements of requirements that cannot be just simply avoided and ignored on appeal. So the defense says he has in fact filed a petition, an extra successive post-conviction petition, and that the trial court has ruled against him on that issue of cause of prejudice and is appealing that issue. But again, if that's true, then his remedy lies in appealing that order because then he would have presented his Miller claim in a post-conviction petition, claimed cause and prejudice, and then this court would have a chance to review whether he in fact did show cause of prejudice and should be granted leave to file that petition. His remedy does not lie in this appeal. When he did not raise this claim and it's not been properly presented, he has forfeiture for not including his petition, cause of prejudice which hasn't been shown, and several facts that have not been proved. It just simply cannot be assumed on appeal. Wasn't that all true in people v. Nieto also, though? Well, this court shouldn't repeat the same, respectfully, repeat the same mistakes that Nieto did. One reason why Nieto... Where did they go wrong? Right, exactly. I was going to answer that question. Good question. No, sorry. So essentially where they went wrong is they said that Thompson implied, implied that this was not subject to forfeiture. But if they read paragraphs 31 and 30 to 34, they would have seen that as-applied challenges are subject to forfeiture because they do not fit within the voidness exceptions that they just specifically recognized. And so to rely on this tangential discussion of Morphin and Luciano, Luciano a case, by the way, that specific... I think that was one that cited the void sentence rule as a reason for reaching the issue, which as for Castleberry, at the time it was fine. So they can't criticize Luciano for having done something that has not the void, relying on the void sentence rule, which had not yet been aggregated. And Morphin, I don't remember seeing anything in Morphin that even talked about forfeiture for failing to raise the issue in the petition. So it's like something that was just completely overlooked. This court shouldn't rely on the void sentencing rule, which has been aggregated, should not overlook forfeiture, and should not strain to find a way to find, to overlook forfeiture when there are specific directives in Thompson controlling decision that recognizes only two types of voidness challenges that are valid after Castleberry. And this court would essentially have to disregard that language from Thompson by trying to look at this distinguishing feature. Now, Thompson did distinguish these other cases, Morphin and Luciano, on the basis that Thompson himself was 19 at the time of the crime. But that's just simply the easiest way to distinguish those cases because of the defendant's age, and then just simply say that that's all they really need to say is, well, Thompson, you were 19 at the time, so we don't need to give you that sort of... We can just simply distinguish those other cases on that basis alone. But Luciano is a void sentence case. Morphin doesn't even talk about forfeiture. So it's not like those cases are really good precedent to rely on by this court. And Nieto, as I said, sort of mistakenly says that Thompson somehow implies that forfeiture doesn't apply right after saying that you can't raise an as-applied constitutional challenge for the that contradicts something that was just expressly stated paragraphs earlier. It just does not make any sense, and your honors should not follow that Nieto decision. So the issue, the remedy, the defendant does cite buffer and other cases that have recognized that that the remedy should just simply be vacating the sentence and sending it back for a new sentencing hearing. But the defendant, I found in, I think, his brief said that the new sentencing hearing was supposed to determine whether his sentence was unconstitutional, and it's like a cart before the horse. We can't just simply assume his Eighth Amendment claim is valid, vacate a sentence that which could be lawful, because there's been no determination as to whether it violates the Eighth Amendment or not, and then have the judge enter a new sentence. Now, what if the new sentence was 70 years again, and the judge makes all the findings? I mean, can be constitutional, whether it's within the state's power, under Montgomery v. Louisiana, to punish him with a de facto life sentence. That is a question that has to be decided as evidence you're hearing, and under Illinois, like Arizona, we cited the Valencia case. We have a procedure, and the procedure is the defendant makes an allegation that he's been deprived of constitutional rights. He puts that in a post-conviction petition. If it passes the motion to dismiss, just assuming, you know, put aside successive and causing prejudice, then he has a burden to prove his claim of constitutional violation, make a substantial showing, and he has that burden to do so at an evidentiary hearing. I think under limited circumstances, the court has sort of said, I think it was Whitfield, a due process case involving guilty pleas, sort of saying what extra showing needs to be made. So they just simply didn't have, they just sort of dispensed with the idea, the procedure of the evidentiary hearing in Whitfield but this is different. The defendant can show whether or not he is, his sentence is unconstitutional under the Eighth Amendment by showing he was actually a minor at the time of the crime, and by showing these other elements that are required under Montgomery v. Louisiana, and Illinois can constitutionally put that burden on him to do so. So he should receive, I mean this court should not follow the other cases that grant resentencing as the remedy, unless of course this court finds under Davis or some other precedent that this court is bound by the controlling precedent of the Illinois Supreme Court to do so. I'm not sure if that's required, but this court, if it's not required by a higher authority, this court should instead follow Illinois procedure and require an evidentiary hearing if further post-conviction proceedings would be ordered. But again, this case is not even a situation where that could really be done because ordering further proceedings on a post-conviction petition that didn't even raise this issue, there's nothing in the pleading that would support that remand. So that's why that would not be something this court should do. Ms. Brooks, ultimately if this case ends up with a new sentencing hearing down the road somewhere, does the defendant get to elect whether he's sentenced under the new amendments or the old law? I think he might have a due process right to elect sentencing under the new law, which would make the firearm enhancement discretionary. If that's what the defendant is saying, I'm not personally aware of that statute, but I would also like to say under the Eighth Amendment at least, which is one of the claims the defendant is primarily making, I think he also relies on the Illinois Constitution, but under the Eighth Amendment, if he gets parole, if across the street, the legislature today passed and the governor signs parole for juveniles, the crimes committed as a juvenile, this case is moved, this issue is moved. That essentially the state gets to decide what they want to do with these cases, and they are not required to forward new sentencing hearings. And Miller and Montgomery v. Louisiana, Alvin v. Miller make this claim, you don't have to grant new sentencing hearings, they can grant them parole. I don't believe the legislature has done that yet, but the legislature could possibly do that in the time before it takes the defendant to go through these proceedings again, including this latest appeal that he's mentioned. So, it does not seem like the constitutional end of the Eighth Amendment, this court must grant him a new sentencing hearing, because obviously his claim isn't properly presented, and even once it gets properly presented, the court and the state can still grant him parole. And if he has a right to parole, then he's not entitled to a new sentencing hearing as a matter of the Eighth Amendment. With respect to Lee's file, his successive, as a matter of law, Ray Sean Pike and the other affidavits concerning what they claim to be the shooter's actual identity, claiming him to be Troy T.Y. Wells, as the person who shot the rival gangster disciple member, does not set forth a colorable claim of actual innocence, and therefore, Lee's file, the successive PC, was properly denied. This affidavit and the other affidavits do not represent total vindication or exoneration. The defendant was a conservative vice lord, they were at the park, allied with vice lords Mickey Cobras and Black T-Stones. And the evidence shows that before the fight, the defendant was saying GDK, which means gangster disciple killer, and the gangster disciple of the rival gangs, obviously urging people on, and also saying other things like squat up, which is telling other people to fight. And he also, I think, was engaged in punching somebody nicknamed Money, which is part of the rival gang. These are parts of the trial evidence. And so, under those circumstances, this would be a textbook accountability case. If the defendant, if T.Y. Wells had pulled out a gun and shot the rival gang member during this mob action, of which the defendant was crucially involved in instigating and centrally and physically involved in participating in, and he's a member of this group that shoots the other member of the group, it's felony murder predicated on mob action. This is textbook accountability case. Defendant is not under total vindication or exoneration. Cases he relies on, Ortiz, Warren, Adams, Lofton, all these are cases in which the evidence puts him, the new evidence, puts that defendant somewhere else during the crime. Says that they were not there. They were not participating in the crime. And so, this is more like the cases like Rivera or even the Williams case, which is a gang altercation involving electrocution on train tracks. It doesn't really matter specifically who shot the gang member, the rival gang member, if the defendant was instigating and participating in the mob action that results in the defendant. And then, we'll see. Doesn't that have something to do with the charging, though? I mean, is it actual innocence of anything? Or is it actual innocence of the crime charge? Because the state's theory is he did it. My understanding that if there's a reasonable doubt created by new evidence, for example, whether the defendant was armed with a firearm instead of a BB gun. New evidence comes out that an armed robbery case, the defendant had only a BB gun, not an armed robbery. But he's still guilty of the robbery. Being guilty of something less does not constitute actual innocence under the rubric of the due process clause that lets him raise this issue. Does accountability permit the enhancement? Again, the accountability, the particular enhancement which he received is personal discharge. So yes, Your Honor, it would not, I'm sorry, which is a no, Your Honor, it would not permit him to be enhanced with the 25 to life, which is the personal discharge. But the other ones that do not require personal discharge, I think would be 15 for being armed with a firearm by committing first degree murder. That can apply by accountability. But again, I said the key point is actual innocence is total vindication. It doesn't mean the defendant should have been guilty of something less or should have been guilty only of something that was not enhanced by the personal discharge. That does not qualify for the due process right to raise actual innocence in a successive post-conviction petition without meeting the cause and prejudice test. That exception is very narrow. And it has to be total vindication or exoneration. And that is completely absent from these facts. And so for that reason, even if the defendant had, I'm sorry, even if the trial court had considered Rayshawn Pikes affidavit, that it would not matter. Because that's not sufficient to make a colorable claim of actual innocence. And the trial court would have been allowed, as a matter of law, to find that that was a reason to leave the file successive PC on the basis of actual innocence. So I've entertained any other questions. Thank you, Your Honors. I request a rebuttal. Just a few points. On the claim of actual innocence, he was only charged with first-degree murder. He was not charged with murder under felony murder, mob action, or accountability theories. And when looking at whether or not evidence exonerates, it looks at if the verdict is unreliable. Here, he was only charged with and convicted of first-degree murder. The fact that he might have been present while someone else did the shooting certainly plays into the... State has to charge accountability, do they? That it's charged the offense and then can argue, as the facts come out, if it supports an accountability theory, can present that to the jury. Absolutely. It's important to note that out of all of the state's witnesses, only two of them identified Byron as the shooter. Ms. Pauston, one of the witnesses, was currently in federal custody. And Ms. Yolanda Davis had received about $3,000 from Crimestoppers and had a pending felony charge. Ms. Yolanda Davis also testified that she saw T.Y., another name for Troy Wells, at the scene of the crime. So a state's witness did place him there. Turning back to the Eighth Amendment issue, Justice Pope, you asked whether or not under the new sentencing scheme, if that's what would apply. In People v. Reyes, the Illinois Supreme Court applied the new sentencing scheme. However, that was a direct appeal. The First District in People v. Buffer, which is one of the cases in the Supplemental Authority, did apply the new sentencing scheme. But the Reyes court didn't even consider the Langdon statute that says it only applies, does not apply retroactively. That's correct. It must not have been argued. Right. And in People v. And there have been subsequent cases that say you have to follow what the statute says. It does not apply retroactively. And you don't even look to the statute on statutes. Isn't that right? I am not aware of those cases. I am aware of People v. Buffer that found that it could be applied because it was a whole new sentencing hearing. And so the sentencing hearing would take place after. Address the language in the statute itself that says that it doesn't apply retroactively? Yes, it does in paragraph 69. How did they explain that language? That because it is a new sentencing hearing, because it is an all new sentencing hearing which takes place after the effective date of the statute, that that is what applies. Furthermore, Castleberry does not apply to this case. We are not arguing that Byron's sentence is void or that he could not be sentenced to 70 years. Simply arguing that the procedure by which he was sentenced was unconstitutional. Okay. Thank you. Thanks to both of you. Excellent arguments. Case is admitted. Court stands in recess.